**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **3:16-CR-0267** |
| | | **(JUDGE MANNION)** |
| **JAHKEL LAMAR,** | : | |
| Defendant | : | |

## M E M O R A N D U M

Pending before the court are the defendant's objections to the presentence report. (Doc. 52). Defendant objects to the report which finds that he qualifies as a career offender under §4B1.1 of the Guidelines. Defendant also requests an evidentiary hearing regarding his objections. Based upon the court's review of the record in this case, the defendant's objections will be **OVERRULED**. As the court finds no need for an evidentiary hearing, the defendant's request for an evidentiary hearing will be **DENIED**.

## I. BACKGROUND

On September 13, 2016, a grand jury returned a one count indictment charging defendant Jahkel Lamar with possession with intent to distribute in excess of 28 grams of cocaine base (crack), in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B). (Doc. 1). On April 24, 2017, Lamar plead guilty to the charge pursuant to a plea agreement. (Doc. 32, Doc. 36). The court ordered the preparation of a presentence report ("PSR"). The final version of the PSR was prepared by the Probation Office and filed on August 2, 2017. (Docs. 42, 43).

The Probation Office determined that Lamar is a career offender under the United States Sentencing Guidelines, ("USSG"). The PSR indicated that Lamar's two previous Pennsylvania felony drug convictions, along with his prior federal felony drug conviction, qualify as predicate offenses for career offender status. The PSR calculated Lamar's base offense level at 26 because the amount of cocaine base involved in Lamar's offense was 127.2 grams. The PSR then concluded that Lamar was a career offender and explained as follows:

> The defendant was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction is a felony that is a controlled substance offense; and the defendant has at least two prior felony convictions for a controlled substance offense (paragraphs 23, 25, and 26); therefore, the defendant is a career offender. The offense level for a career offender is 34 because the statutory maximum term of imprisonment is 40 years. (USSG §4B1.1(b)(2)).

Specifically, the PSR found that Lamar's prior criminal convictions included the following three drug trafficking convictions:

> 1/5/06 Date of Arrest; Conviction for Possession of a Controlled Substance with Intent to Deliver and Criminal Conspiracy to Commit Possession of a Controlled Substance with Intent to Deliver (Luzerne County Court of Common Pleas); 4/5/07 sentenced to 4 to 12 months of imprisonment.
>
> 12/12/06 Date of Arrest; Possession with Intent to Distribute a Controlled Substance; (Luzerne County Court of Common Pleas); 4/7/08 sentenced to 18 to 36 months imprisonment.
>
> 11/2/07 Date of Arrest; Conspiracy to Distribute and Possess With Intent to Distribute in Excess of 50 grams of Cocaine Base, Cocaine, Heroin and Marijuana; (United States District Court, Scranton, PA) (Docket # CR-07- 341); 8/19/09 sentenced to 63

months of imprisonment followed by 5 years of supervised release; 7/8/11 term of imprisonment reduced to 51 months.

The first two drug trafficking convictions were under Pennsylvania State law and the third under federal law.

Lamar's offense level was reduced by three levels for acceptance of responsibility under USSG §3E1.1(a) and §3E1.1(b). The PSR then found that Lamar's recommended guideline imprisonment range was 188 to 235 months imprisonment based upon a total offense level of 31 and a criminal history category of VI.

Lamar, who is represented by counsel, failed to file any timely written objections to the PSR. However, at the sentencing hearing, Lamar's counsel orally raised these objections. In an abundance of caution, the court delayed sentencing and directed Lamar to file his objections and a brief in support by November 3, 2017. (Docs. 52, 52-1). The government responded to the objections on November 9, 2017. (Doc. 51). Lamar did not file a reply brief and the time within which to do so has expired.

**II. DISCUSSION**

Lamar's objections to the PSR are all based on its determination that he is a career offender. He contends that his two prior Pennsylvania drug convictions do not constitute predicate offenses for purposes of career offender status. Lamar does not object to the use of his prior federal drug conviction as a predicate offense. As such, only one of Lamar's prior

Pennsylvania drug conviction needs to be found a predicate offense in order for him to be classified as a career offender.[1] Lamar relies on United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016), which involved a Texas drug trafficking statute that interpreted the Supreme Court's decision in Mathis v. United States, 136 S.Ct. 2243 (2016). The Supreme Court in Mathis, 136 S.Ct. at 2257, held that a conviction under Iowa's burglary statute did not qualify as a predicate crime of violence under the Armed Career Criminal Act ("ACCA") since the elements of Iowa's burglary statute were broader than the elements of generic burglary. In *Mathis, id.*, the Supreme Court explained that to determine whether the conviction qualifies as a predicate offense, district courts should use a categorical approach[2]:

> Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements. Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct – his particular means of committing the crime – falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission: Whether or not made explicit, they remain what they ever were – just the facts, which ACCA (so we have held,

---

[1] A career offender is someone who has at least two prior felony convictions for violent crimes and/or controlled substance offenses in addition to their current felony conviction for a violent or controlled substance offense.

[2] Under the categorical approach, "[i]f the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate." Descamps v. United States, —— U.S. ——, 133 S.Ct. 2276, 2283 (2013)(citation omitted).

4

over and over) does not care about.

In United States v. Steiner, 847 F.3d 103, 118 (3d Cir. 2017), the Third Circuit noted that:

> *Mathis* is the latest in the Supreme Court's series of opinions on how prior convictions can be used as predicate "violent felonies" under the Armed Career Criminal Act ("ACCA," 18 U.S.C. §924(e)), precedent that generally applies also to "crimes of violence" enhancements under the Guidelines. *Mathis* further refined the Court's jurisprudence about when, in applying an elements-based enhancement or analysis, a court may use the "modified categorical approach" — appropriate for statutes that are "divisible," listing elements in the alternative or describing separate crimes, and which is employed to determine what crime a defendant was actually convicted of — instead of the "categorical approach," to which we turn when a statute is not divisible.

(Footnotes omitted).

In *Hinkle*, the Fifth Circuit held that a Texas drug trafficking statute that included in its definition of "delivery"[,] an unfulfilled or fraudulent offer to sell drugs[,] was broader than the definition of "controlled substance offense" set forth in the career offender guidelines. Therefore, in the eyes of the *Hinkle* Court, a conviction under the Texas [drug trafficking] statute did not qualify as a predicate "controlled substance offense" for purposes of the career offender guidelines.

Lamar argues that the Pennsylvania drug statute, under which he was twice convicted, has the same element of "offering for sale" and is "indistinguishable" from the Texas statute in *Hinkle*. With reference to 35 Pa.Stat.Ann. §780-113(a)(1), Lamar states that:

5

> The Pennsylvania Statute, like the almost identical Texas Statute, does not qualify as a "controlled substance offense" under the Guidelines because it criminalizes conduct that is not included within the Guidelines' definition of a "controlled substance offense". Like the Texas Statute, the Pennsylvania Statute permits a conviction by proving only an offer to sell, and an offer to sell does not constitute a "controlled substance offense" within the meaning of the Guidelines.

(Doc. 52 at 6-7).

Therefore, Lamar contends that it was erroneously determined in the PSR that he was a career offender under the Guidelines because his two prior state drug convictions can not be used as predicate offenses. A "controlled substance offense" is defined in §4B1.2(b), as a conviction for an offense that is punishable by a term of imprisonment that exceeds one year and involves "the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute or dispense."

The court reviewed the Informations filed against Lamar regarding his April 5, 2007 conviction in Luzerne County, CR-352-2006, and his April 7, 2008 conviction in Luzerne County, CR-5093-2006, as well as the police complaints and supporting affidavits. These charging documents indicate that Lamar's drug offenses were under 35 Pa.Stat.Ann. §780-113(a)(30). The relevant Pennsylvania statute, 35 §780-113(a)(30), under which Lamar was convicted, provides in relevant part:

> a) The following acts and the causing thereof within the

> Commonwealth are hereby prohibited:
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

Under Pennsylvania law, this statute does not include an unfulfilled or fraudulent offer to sell drugs. Therefore, the Pennsylvania statute is not categorically broader than the definition of 'controlled substance offense' set forth in the career offender guideline." In his brief, (Doc. 52), Lamar actually relies upon 35 Pa.Stat.Ann. §780-**113(a)(1)**. However, Lamar was not convicted under 35 Pa.Stat.Ann. §780-**113(a)(1)** with respect to the two state drug convictions relied upon in the PSR to support the determination that he was a career offender. He was convicted under 35 Pa.Stat.Ann. §780-**113(a)(30)**. Thus, to this extent, his objections are inapplicable.

Additionally, Lamar's reliance on the case of United States v. Glass, 701 Fed.Appx. 108 (3d Cir. July 26, 2017), is not determinative since the Third Circuit merely found that an issue raised by the defendant under *Hinkle* was not a frivolous contention for purposes of determining whether his appellate counsel could withdraw under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396 (1967).

However, what the *Glass* Court did determine was that a court must use the modified categorical approach to determine whether convictions under §780–113(a)(30) qualify as "controlled substance offenses" for career

7

offender purposes. (citing *Abbott, supra*). *See also* United States v. Henderson, 841 F.3d 623, 627 (3d Cir. 2016), *cert. denied*, 2017 WL 2937461 (U.S. Oct. 2, 2017) ("In *United States v. Abbott*, [748 F.3d at 156,] we determined that Section 780-113(a)(30) of Pennsylvania's Controlled Substance Act – the section that underlies Henderson's previous convictions – is 'divisible' and subject to the modified categorical approach.").

In Henderson, 841 F.3d at 627, the Third Circuit then explained the modified categorical approach as follows:

> When faced with divisible statutes, we apply a "modified categorical approach" that allows us "to consult a limited class of documents ... to determine which alternative formed the basis of the defendant's prior conviction." Descamps, 133 S.Ct. at 2281. The modified categorical approach permits us to "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id.; see also id.* at 2285 (noting that "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute" because it "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime").

In United States v. Velez, 2017 WL 3028612, at *3 (E.D.Pa. Jan. 6, 2017), the court stated that "[t]he Third Circuit has held that 35 Pa.Stat.Ann. §780-113(a)(30) is 'divisible' because it 'can be violated by the possession of and intent to distribute many different drugs, the types of which can increase the prescribed range of penalties.'" (citing Abbott, 748 F.3d at 159). The court in *Velez, id.*, then explained that "[be]cause it is divisible, the modified categorical approach applies, and I may look at a limited number of

8

documents, including the charging document and judgement, to determine under which subsection Petitioner was convicted."

In the present case, the PSR, (Doc. 42, ¶'s 23, 25), briefly detailed the facts of each of Lamar's qualifying predicate offenses. Regarding his April 5, 2007 state drug conviction, the PSR stated, "[o]n January 4, 2006, [ ] Lamar sold heroin to a confidential informant in Wilkes-Barre, Pennsylvania." With respect to his April 7, 2008 state drug conviction, the PSR stated, "[o]n December 12, 2006, [ ] Lamar was involved in an altercation at a convenient store in Wilkes-Barre. Police took the defendant into custody. The subject attempted to discard a plastic bag that contained 26 packets of heroin and 17 packets of cocaine base (crack)." With respect to his August 19, 2009 state drug conviction, the PSR stated, "[i]n 2006 and 2007, [ ] Lamar conspired to distribute and possess with intent to distribute 50 to 150 grams of cocaine base (crack) in Luzerne County. The defendant was identified as a main dealer in the conspiracy." (Doc. 42 at 6-8). Also, as indicated, the court reviewed the charging documents regarding Lamar's April 5, 2007 conviction and his April 7, 2008 conviction under 35 Pa.Stat.Ann. §780-113(a)(30). The court finds that the elements of 35 Pa.Stat.Ann. §780-113(a)(30) match the elements of a "controlled substance offense" as defined under the Guidelines. Under Pennsylvania law, possession with intent to deliver cocaine base (crack) and heroin is punishable by a maximum of ten years imprisonment and therefore qualifies as a "controlled substance offense" for career offender purposes under the Guidelines. Lamar was

9

convicted of selling heroin to a CI and, of possessing with intent to deliver 26 packets of heroin and 17 packets of crack.

Based on the modified categorical approach, the court finds that Lamar's two drug convictions under 35 Pa.Stat.Ann. §780-113(a)(30) are indeed "controlled substance offenses" for purposes of the career offender enhancement. *See* United States v. Colon, 2015 WL 127726, at *5-*6 (E.D.Pa. Jan 6, 2015), certificate of appealability denied (3d Cir. 15-1577) (Sept. 14, 2015) (court held that under modified categorical approach, defendant's prior Pennsylvania convictions under 35 Pa.C.S. §780-113(a)(30) for possession with intent to distribute marijuana qualify as "controlled substance offenses" for career offender purposes.).

Thus, the court finds that the PSR correctly determined that Lamar's two state convictions, as well as his prior federal 2009 drug conviction for conspiracy to distribute and possession with intent to distribute in excess of 50 grams of cocaine base, as well as cocaine, heroin and marijuana, are within the Guidelines' definition of a "controlled substance offense", and that it correctly determined that Lamar is a career offender. As such, Lamar's objections to the PSR will be **OVERRULED**. (Doc. 52).

Finally, Lamar requests an evidentiary hearing regarding his objections, (Doc. 52 at 11-12), since he states that it is within the court's discretion to hold a hearing "to determine the truth of allegations where the Defendant's Objections to the PSR raise issues of material fact." Lamar does not state what evidence he wishes to present at an evidentiary hearing if the court

were to conduct one. In U.S. v. Bigica, 543 Fed.Appx. 239, 244 (3d Cir. 2013), the Third Circuit stated that "[Fed.R.Cirm.P.] 32 does not make an evidentiary hearing mandatory [regarding objections to a PSR]; it only requires the District Court to either make a finding as to the disputed facts or expressly disclaim use of the disputed facts in sentencing." (citing United States v. Furst, 918 F.2d 400, 408 (3d Cir.1990)). The court will **DENY** Lamar's request for an evidentiary hearing, since it is not necessary to the legal determination that Lamar's two drug convictions under 35 Pa.Stat.Ann. §780-113(a)(30) are "controlled substance offenses" under the modified categorical approach for purposes of the career offender enhancement under the Guidelines.

### III. CONCLUSION

Accordingly, Lamar's objections to the PSR are **OVERRULED**, (Doc. 52), and, the court finds that Lamar qualifies as a career offender under USSG §4B1.1. (PSR, Doc. 42 at ¶18). As such, the court finds that the PSR properly determined that Lamar's total offense level is 31, his criminal history category is VI and his advisory guideline range is 188-235 months imprisonment. (Id. at ¶47). Lamar's request for an evidentiary hearing, (Doc. 52 at 11-12), is **DENIED**.

An appropriate order shall issue and by separate order, the court will re-schedule sentencing.

s/ *Malachy E. Mannion*<br>
**MALACHY E. MANNION**<br>
**United States District Judge**

**Date: February 8, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2016 CRIMINAL MEMORANDA\16-0267-01.wpd